UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

SCOTT J. NJOS,          :
                        :
    Petitioner          :
                        :
v.                      :  CIVIL NO. 3:CV-14-0875
                        :
WARDEN THOMAS,          :  (Judge Kosik)
                        :
    Respondent          :

**MEMORANDUM**

Presently before the Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 filed by Scott J. Njos ("Petitioner"). Petitioner is an inmate currently confined at the United States Penitentiary at Lewisburg, Pennsylvania. He alleges that his due process rights were violated during a disciplinary hearing after which he was found guilty of the prohibited act of "Assaulting any Person (Attempted)" in violation of Code 224A. (Doc. 1, Pet.) The petition is ripe for consideration and, for the reasons that follow, will be denied.

I.  **Factual Background**

Petitioner is serving a 170-month federal sentence imposed by the United States District Court for the Northern District of Illinois for bank robbery. On April 24, 2012, while confined at USP-Lewisburg, Incident Report No. 2295911 was issued

against Petitioner by Officer S. Prutzman charging him with a Code 224A violation for "Assaulting any Person (Attempted)" and a Code 307 violation for "Refusing to Obey an Order." (Doc. 8-1 at 16-17.)[1] Prutzman described the incident as follows:

> On the date of 4/14/2012 at approximately 12:06 pm, this officer assisted in placing Inmate Njos #30162-424 and Inmate [redacted] back in cell #116 on the first floor of C-block, after a random cell search. Inmate [redacted] and Inmate Njos both refused to give up their hand restraints when they were ordered to. I called the East Lt. to the first floor of C-block, Cell #116. The East Lt. ordered both inmates to turn around and back out of the cell. Both inmates initially complied to the orders. Once the cell door opened, Inmate [redacted] spun towards Officer Argueta in an aggressive manner and was taken to the floor with the least amount of force necessary. At the same time, Inmate Njos turned towards myself in an aggressive manner and charged towards me with his head down, attempting to strike me in the chest area. I placed Inmate Njos on the floor with the least amount of force necessary. I was then relieved of duties by responding staff.

(Id. at 16.)

On April 24, 2012, Petitioner was given advanced written notice of the charges against him by Lt. J. Ordonez. (Doc. 8-1, DeSanto Decl. ¶ 7; Attach. 1.) He was also advised of his right to remain silent on this date by Lt. J. Sherman. (Id. ¶ 8; Attach. 1.) During the investigation, Petitioner indicated that he understood his rights and that he declined to provide a statement. Lt. Sherman indicated that Petitioner did not request any witnesses during the investigation. Id.

---

[1] Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the Court's official electronic case filing system (CM-ECF), rather than the page number of the original documents.

2

Petitioner appeared before the Unit Discipline Committee ("UDC") on April 25, 2012. (Id. ¶ 9; Attach. 1.) He was advised of his rights and stated "I did refuse to uncuff, but I never charged anyone." (Id.) Due to the severity of the alleged misconduct, the UDC referred the incident report to the DHO. (Id. ¶ 10, Attach. 1.) Because the incident report was referred to the DHO, Petitioner was provided with a copy of the "Inmate Rights at Discipline Hearing" form. (Id. ¶ 11; Attach 2.) He was specifically advised that he had the following rights at the DHO hearing:

1. The right to have a written copy of the charge(s) against [him] at least 24 hours prior to appearing before the [DHO];

2. The right to have a full-time member of the staff who is reasonably available to represent [him] before the [DHO];

3. The right to call witnesses (or present written statements of unavailable witnesses) and to present documentary evidence in [his] behalf, provided institutional safety would not be jeopardized;

4. The right to present a statement or to remain silent. [His] silence may be used to draw an adverse inference against [him]. However, [his] silence alone may not be used to support a finding that [he] committed a prohibited act;

5. The right to be present throughout the discipline hearing except during a period of deliberation or when institutional safety would be jeopardized. If you elect not to appear before the DHO, you may still have witnesses and a staff representative appear on your behalf;

6. The right to be advised of the DHO's decision, the facts supporting that decision, except where institutional safety would be jeopardized, and the DHO's disposition in writing; and

> 7. The right to appeal the decision of the DHO by means of the Administrative Remedy Procedure to the Regional Director within 20 calendars days of notice of the DHO's decision and disposition.

(Id. ¶ 11; Attach. 2.) Petitioner refused to sign for his copy of the "Inmate Rights at Discipline Hearing" form. (Id. ¶ 12; Attach. 2.) The form was signed by Correctional Counselor K.A. Metzger as a witness. (Id.)

Petitioner was also provided with a copy of the "Notice of Discipline Hearing Before the Discipline Hearing Officer (DHO)" form. (Id. ¶ 13; Attach. 3.) He again refused to sign the form and Correctional Counselor Metzger signed the form as a witness. (Id.) Petitioner did request the services of a staff representative and to have his cellmate as a witness (Inmate XXXX[2]) at the DHO hearing. The staff representative form was signed by R. Whitmore indicating that he was aware of his responsibilities as a staff representative. (Id. ¶ 14; Attach. 4.)

The DHO hearing took place on May 30, 2012 before DHO Jordan. (Id. ¶ 15; Attach. 5.) Jordan noted that Petitioner had received advance written notice of the charges on April 24, 2012; that he had been advised of his rights before the DHO on April 25, 2012; and that he had requested a staff representative for the hearing. DHO Jordan advised Petitioner of his rights, and Petitioner indicated that he understood

---

[2] Respondent uses "XXXX" to refer to Petitioner's cellmate since his name has been redacted from all exhibits submitted. This inmate also testified on Petitioner's behalf at the DHO hearing. When referring to this inmate, the court will also use the same designation.

them. It was also noted by the DHO that Petitioner denied the charges. (Id. ¶¶ 16, 17; Attach. 5.)

Staff representative Whitmore appeared on Petitioner's behalf. He indicated that Petitioner made no specific requests of him, and that he had no first-hand knowledge of the incident serving as the basis of the DHO hearing. Petitioner was given the opportunity to make a statement and testified that Section 11 of the incident report was inaccurate.[3] He testified that when staff returned him to his cell following a search that had been conducted, all of his and his cellmate's belongings were missing. Petitioner states that he refused to uncuff until he received a confiscation slip. When officers cracked the door, they yelled to him to turn around. Petitioner stated that he stayed at the back of the cell, facing the wall. According to Petitioner, they knocked him to the ground and the next thing he remembered was waking up 12 hours later. (Id.)

Inmate XXXX appeared at the DHO hearing as requested by Petitioner. He testified that Petitioner ". . . went to the back of the cell when [he] went over to get cuffed up." (Doc. 8-1 ¶ 21; Attach. 5.) No procedural issues were cited at the hearing, and no documentary evidence was provided by Petitioner. (Id. ¶ 22; Attach. 5.)

---

[3] Section 11 of the Incident Report provides the "Description of the Incident." (Doc. 8-1 at 16.)

5

The following documentary evidence was considered by the DHO before rendering a decision in this case: the memoranda of Officers E. Good, S. Hicks, P. Carrasquillo, R. Weaver, T. Burns, L. Bidelspach, and J. Page; the Health Services staff injury assessment and follow-up forms of Officer Prutzman; photographs of Officer Prutzman and Petitioner taken following the incident; a Health Services Clinical Encounter form concerning Petitioner; video footage of the incident; and incident report #2295124[4]. (Id. ¶ 23; Attach. 6.)

The DHO also considered the statement of staff to be a credible assessment of the incident and drew the conclusion that the greater weight of the evidence supported the finding that Petitioner committed the prohibited act of "Assaulting any Person (Attempted)", a Code 224A violation of the disciplinary code. (Id. ¶¶ 25, 34; Attach. 5.) The DHO found no due process or procedural violations in the disciplinary hearing. (Id. ¶ 28.)

Based on the foregoing, DHO Jordan imposed sanctions of 27 days disallowance of Good Conduct Time, 30 days of disciplinary segregation, and 6 months loss of visits, commissary and telephone privileges. (Id.) Because attempting to assault a correctional staff member jeopardizes the security and order of the prison,

---

[4] Incident report #2295912 was another incident report written by Officer Prutzman against Petitioner for his misconduct regarding the possession of intoxicants just prior to the incident at issue in this action. Staff had performed a cell search in Petitioner's cell and found homemade liquid intoxicants that tested positive for the presence of alcohol. (Doc. 8-1 at 50; Incident Report #2295912.)

the sanctions were imposed to punish the inmate for the misconduct, as well as to deter any future misconduct.

The DHO advised Petitioner of these findings, the specific evidence relied upon, the action taken, and the reasons therefore. Petitioner was also advised of his right to appeal within 20 calendar days, and was provided with a copy of the DHO report. (Id. ¶ 27.)

The instant habeas corpus petition was filed on May 7, 2014. Petitioner challenges the disciplinary action against him claiming that the incident report was false. He contends that the officers conspired to use excessive force against him and that he is innocent of the Code 224A violation. (Doc. 1, Pet.)

## II. Legal standard

Petitioner alleges that his due process rights were violated during the disciplinary hearing. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974.) However, a prisoner facing serious institutional sanctions such as the loss of good time credits is entitled to some procedural protection before penalties can be imposed. Id. at 563-71.

Wolff set forth the following five requirements of due process in a prison disciplinary proceeding: (1) the right to appear before an impartial decision-making body; (2) written notice of the charges at least twenty-four (24) hours in advance of

7

the hearing; (3) an opportunity to call witnesses and present documentary evidence when doing so would not be unduly hazardous to institutional safety or correctional goals; (4) assistance from an inmate representative, if the charged inmate is illiterate or if complex issues are involved; and (5) a written statement by the fact finder as to the evidence relied upon and the reasons for the disciplinary action. See Wolff, 418 U.S. at 563-71. An additional procedural requirement was set forth in Superintendent, Massachusetts Correctional Inst. at Walpole v. Hill, 472 U.S. 445, 453-56 (1985), requiring that there be some evidence which supports the conclusion of the disciplinary tribunal. See also Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991)(applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Hill, 472 U.S. at 455-56. Under Hill, judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, that the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Id. at 457; see also 28 C.F.R. § 541.8(f) (requiring that the DHO's decision be "based upon at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."). Moreover, "[t]he

sufficiency standard is met where a DHO supports a finding of culpability solely by reference to an incident report compiled by a corrections officer." Moles v. Holt, 221 F. App'x 92, 94 (3d Cir. 2007)(citations omitted).

## III. Discussion

The court finds the petition to be without merit in that the procedural requirements of Wolff and Hill were met in the instant case. Petitioner does not allege that the DHO was not impartial, that he was not afforded 24 hour advance written notice of the charges, that he was not provided the opportunity to provide documentary evidence, or that he was denied the assistance of a staff representative. He also does not argue that he failed to receive a copy of the DHO's written report and the rationale supporting the decision. The record fully supports that these due process requirements were satisfied in the instant case.

Rather, Petitioner's sole claim is that the incident report was false and that he did not assault anyone. He claims that the officers conspired to assault him. The record belies this claim, and the "some evidence" standard was met or exceeded as supported by the record. The finding of guilt was supported by the written report of Officer Prutzman. In addition, the memoranda of Officers Good, Hicks, Carrasquillo, Weaver, Burns, Bidelspach and Page provided eyewitness testimony to the events that occurred that corroborated Prutzman's report that Petitioner attempted to assault staff.

For example, Officer Good stated that he witnessed Petitioner turn towards

Prutzman and charge towards him in an aggressive manner with his head down. He also assisted in placing Petitioner on the floor, and testified as to how Petitioner remained combative while officers were attempting to control him. (Doc. 8-1 at 33.) Officer Hicks testified that both Petitioner and his cellmate (Inmate XXXX) refused to give up their hand restraints, which Petitioner admits is true, and then witnessed Petitioner charge toward Prutzman. He also assisted in controlling him thereafter. (Id. at 34.) Officer Carrasquillo also observed the same conduct and assisted in the restraint of Petitioner. (Id. at 35.) Officer Weaver states he controlled the lower right appendage on Petitioner, and Officer Bidelspach later escorted Petitioner to the holding cage area where he assisted in placing Petitioner in ambulatory restraints. (Id. at 36-37.) Officer Burns witnessed Petitioner controlled on the ground by the other officers. (Id. at 38.) When Officer Page arrived, Petitioner was being held on the ground by staff after the assault attempt. Page began to record by video. (Id. at 39.)

      Injury assessments submitted show that Prutzman sustained contusions to his right elbow and an abrasion to his left index finger as a result of the assault attempt and also that Petitioner only sustained minor injuries including a minor laceration to the bridge of his nose and forehead and swelling to his lower lip during the incident, certainly not suggestive of any conspiracy to subject Petitioner to excessive force. (Id. at 40, 42.) Photographs were also considered by the DHO that depicted these

injuries. (Id. at 41, 45.)

While the video evidence submitted only showed the area outside of the cell, as no video surveillance exists documenting the events occurring inside the cell, the video coverage submitted is consistent with the reports of the eyewitnesses as to what was reported to have occurred inside the cell. For example, the video depicted inmate XXXX spinning toward staff in an aggressive manner after exiting the cell, at which time he was taken to the floor. At the time inmate XXXX was placed on the ground, responding staff entered the cell very quickly, where Petitioner remained. The greater weight of evidence corroborates the description of the incident contained in Section 11 of the Incident Report, that Petitioner reacted to the incident that was occurring with inmate XXXX, and ran towards staff in an attempt to assault them. (Doc. 8-1 at 29.)

In addition, the DHO considered other evidence including Petitioner's statements that staff searched his cell and items were missing, and found such testimony to be corroborated by Incident Report #2295912 written against Petitioner for the Possession of intoxicants, just prior to the incident report at issue herein. The DHO found the greater weight of the evidence to suggest that the removal of the intoxicants and other items from Petitioner's cell served as a motivation for the commission of the prohibited act in the instant matter. The DHO also considered Petitioner's admission that he and his cellmate refused to allow staff to remove their

11

hand restraints when they were ordered to do so. Also considered, and found to be less credible, was Petitioner's statement that he remained facing the back wall in his cell, and that staff entered and knocked him to the ground. This statement was not consistent with the video documentation of staff reacting quickly and rushing into the cell following Inmate XXXX's conduct and the reports of multiple eyewitnesses.

Moreover, the DHO considered Petitioner's statement that he was attacked and knocked out for 12 hours. This statement was found to be without merit. A photograph taken of Petitioner immediately after the incident showed him awake and looking into the camera. In addition, video footage recorded by Officer Page immediately after the incident depicted Petitioner as coherent, obeying staff's orders to submit to ambulatory restraints, and making numerous verbal complaints.

For the above reasons, because all of Petitioner's procedural due process rights were afforded to him and because the DHO's findings met or exceeded the some evidence standard, the instant petition will be denied.[5] An appropriate order follows.

---

[5] Petitioner's pending motion for disclosure (Doc. 9) of better quality photographs/video surveillance will be denied. The photos submitted by Respondent depict the events as reported by Respondent, and the picture of Petitioner clearly reveals that he was awake and alert for the photograph.